

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 20, 2008

**BY HAND AND TELEFACSIMILE**

Hon. Paul A. Crotty
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Dean Jones*,
              **07 Cr. 1081 (PAC)**

Dear Judge Crotty:

      The Government respectfully submits this letter in response to the defendant's motion to suppress physical evidence based upon a purportedly illegal search and seizure in advance of the suppression hearing currently scheduled for March 26, 2008, at 10:30 a.m. As explained below, the Government disputes the factual allegations made by the defendant in support of the instant motion. The Government respectfully submits that the Court should deny the defendant's motion, either after a hearing or as a matter of law prior to any hearing.

## FACTUAL BACKGROUND

      On August 8, 2007, officers of the New York City Police Department ("NYPD") on routine patrol in the Bronx observed a livery cab drive by without a partition between the driver and the passenger (the defendant). (Complaint ¶¶ 2(a)&(b)). The officers pulled the livery cab over, and the defendant began moving about and leaning down in his seat. (Complaint ¶¶ 2(c)&4(b)). After the livery cab pulled over, the defendant got out of the livery cab and fled. (Complaint ¶ 2(d)). The police chased and subsequently caught the defendant. (Complaint ¶ 2(d)).

      One of the police officers – a sergeant – approached the livery cab driver, who told the sergeant that he thought that the defendant left something in the back of the livery cab. (Complaint ¶ 2(e)). The livery cab driver consented to the sergeant searching the back of the livery cab. The sergeant looked in the area of passenger-side back seat of the livery cab and saw a gun sticking out from underneath the passenger seat into the back-seat area. (Complaint ¶ 2(e)). He secured the gun, which was a loaded .357 caliber "Magnum" revolver. (Complaint ¶ 2(e)). That gun did not belong to the livery cab driver. (Complaint ¶ 4(d)).

Hon. Paul A. Crotty
March 20, 2008
Page 2 of 12

The defendant is a previously-convicted felon, and the gun was not manufactured in the state of New York. (Complaint ¶¶ 3 and 5).

Before August 2007, the defendant had been convicted of three felonies: attempted assault in the second degree, in New York Supreme Court, Bronx County, and assault in the first degree in New York Supreme Court, New York County; assault in the first degree, in New York State Supreme Court, Bronx County, and attempted criminal possession of a controlled substance in the third degree, in New York State Supreme Court, Bronx County. (Complaint ¶ 5). Because of these prior convictions, and because the gun that the defendant placed underneath the seat was manufactured outside of New York (Complaint ¶ 3), the defendant was charged as a felon in possession of a gun, in violation of 18 U.S.C. § 922(g)(1).

## DISCUSSION

**A.     The Motion to Suppress The Gun Should Be Summarily Denied**

The defendant moves to suppress the gun found in the livery cab. He challenges the legality of both: (1) the initial car stop, stating that there was no traffic violation justifying the stop, and (2) the subsequent search of the back seat, which he claims was a violation of his reasonable expectation of privacy in the back-seat area of the livery cab. As explained below, this motion fails as a matter of both law and fact. Initially, it fails because the defendant lacks standing to assert this claim because he did not have a reasonable expectation of privacy in the public interior of the public livery cab in which he was a mere one-way passenger. In any event, both the stop of the cab and subsequent search of the interior space were entirely lawful. Defendant's affidavit fails to raise any disputed material facts about these issues. Accordingly, there is no need for a hearing and no basis for suppressing the gun. In the alternative, this Court should deny the motion following a hearing about the legality of the stop.

   **1.     The Defendant Lacks Standing To Challenge The Search And Seizure**

As a threshold matter, the motion to suppress the gun must be denied as a matter of law because the defendant lacks standing to challenge the search of the livery cab and the subsequent seizure of the gun from inside the cab.

It has long been settled that a defendant cannot move to suppress evidence on Fourth Amendment grounds unless she is able to demonstrate that she had a "legitimate expectation of privacy" in the searched area. *See, e.g., Rawlings* v. *Kentucky*, 448 U.S. 98, 104-05 (1980) (citing *Rakas* v. *Illinois*, 439 U.S.128, at 131 n.1 (1978)); *United States* v. *Watson*, 404 F.3d 163, 166 (2d Cir. 2005) ("[t]he defendant 'bears the burden of proving . . . that he had a legitimate expectation of privacy'") (quoting *Rawlings*, 448 U.S. at 104); *United States* v. *Paulino*, 850

Hon. Paul A. Crotty
March 20, 2008
Page 3 of 12

F.2d 93, 96 (2d Cir. 1988) ("[I]t is a person's legitimate expectation of privacy in the space invaded that is critical."). This is because "Fourth Amendment rights are personal rights . . . [that] may not be vicariously asserted." *United Sates* v. *Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (quoting *Rakas*, 439 U.S. at 133-34). A defendant's constitutional rights are violated "only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *United States* v. *Payner*, 447 U.S. 727, 731 (1980) (emphasis in original); *United States* v. *Saint Prix*, 672 F.2d 1077, 1082 (2d Cir. 1982) ("Only a defendant whose own privacy has been invaded can exclude evidence taken during the invasion.").

"When considering a claimed violation of Fourth Amendment rights, the burden is on the defendant to establish that his own rights under the Fourth Amendment were violated." *Paulino*, 850 F.2d at 96. To satisfy this burden, the defendant must submit an "affidavit from someone with personal knowledge demonstrating sufficient facts to show that he had a legally cognizable privacy interest in the searched premises at the time of the search." *United States* v. *Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), *aff'd*, 44 F.3d 1102 (1995) (citing *Rawlings*, 448 U.S. at 98); *Rakas*, 439 U.S. at 130 n. 1.

Here, the defendant has fallen far short of carrying this burden. He has not demonstrated, and cannot demonstrate, a reasonable expectation of privacy in the interior of a livery cab in which he was only a local fare. No less an authority than the Supreme Court has held that non-owner passengers in a vehicle lack standing to seek suppression of incriminating evidence found in the vehicle. *See Rakas* v. *Illinois*, 439 U.S.128 (1978). In *Rakas*, the defendants, who were what the Court called "merely passengers" in a private car, challenged the seizure of a rifle and bullets from the glove compartment and the area under the seat. The Supreme Court ruled that they could not seek to suppress this evidence because as passengers they lacked a reasonable expectation of privacy in the searched areas. It explained:

> "[T]he fact that they were 'legitimately on (the) premises' in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular area of the automobile searched. . . . (The defendants here) made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy."

439 U.S. at 148.

Hon. Paul A. Crotty
March 20, 2008
Page 4 of 12

  *Rakas* is not alone. It is just one of a line of decisions holding that mere passengers in cars – including, as here, livery cabs – lack standing to seek to suppress evidence found in these vehicles. *See, e.g., United States* v. *Perea*, 986 F.2d 633, 639 (2d Cir. 1993) (passenger-defendant's motion seeking to suppress evidence found in taxi cab's trunk "does not require extended discussion" because the defendant did not have right to exclude others from it and the driver had a greater right than the defendant to use the trunk); *United States* v. *Paulino*, 850 F.2d 93 (2d Cir. 1988) (backseat passenger could not challenge seizure of counterfeit money from under mat on rear floor of car); *United States* v. *McGrath*, 613 F.2d 361, 365 (2d Cir. 1979) (neither occupant nor owner of van could object to search of briefcase in van but owned by a third party); *United States* v. *Abdul-Alim*, 1999 WL 4971, No. 98 Cr. 1077 (S.D.N.Y. Jan. 6, 1999) (denying passenger-defendant's motion to suppress gun found in trunk); *United States* v. *Leon*, 1994 WL 557046, No. 94 Cr. 308 (S.D.N.Y. Oct. 7, 1994) (denying motion to suppress evidence found in vehicle where defendant lacked reasonable expectation of privacy in the area of the car searched); *United States* v. *Culmer*, 1989 WL 135260, No. 89 Cr. 0448 (S.D.N.Y. Nov. 1, 1989) (denying motion to suppress drugs found in closed bag in vehicle in which defendants were passengers and observing that "occupants of cars have a diminished expectation of privacy"); *United States* v. *Amparo*, 1988 WL, 25186, No. 87 Cr. 753 (S.D.N.Y. Mar. 3, 1988) (defendant sitting in back seat of livery cab who "presented no facts to indicate that he had a legitimate expectation of privacy" in livery cab "failed to establish that he has standing to suppress the evidence seized therefrom").

  The Supreme Court recently supplemented the jurisprudence on automobile stops in *Brendlin* v. *California*, 127 S.Ct. 2400 (2007). In *Brendlin*, the Supreme Court found that a passenger in a private vehicle is "seized" when the car is stopped by the police, and that passenger therefore has standing to challenge the stop of the vehicle. *See id.* at 2407-08. As the Supreme Court stated, "[A]ny reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission." *Id.* However, the Supreme Court explicitly carved common carriers, such as the livery cab in this case, out from this *per se* rule:

> California claims that, under today's rule, "all taxi cab and bus passengers would be 'seized' under the Fourth Amendment when the cab or bus driver is pulled over by the police for running a red light." . . . But the relationship between driver and passenger is not the same in a common carrier as it is in a private vehicle, and the expectations of police officers and passengers differ accordingly. In those cases, as here, the crucial question would be whether a reasonable person in the passenger's position would feel free to take steps to terminate the encounter.

*Id.* at 2410 n.6.

Hon. Paul A. Crotty
March 20, 2008
Page 5 of 12

      Indeed, two decisions are particularly analogous. First, in the Second Circuit's *Paulino* decision, NYPD officers approached a car that was double parked in a high crime area of Upper Manhattan. As they spoke to the driver, they observed the passenger in the back seat make a furtive movement, which prompted them to order all of the passengers out of the car. They then found a packet of counterfeit bills underneath the rubber mat on the floor of the back seat. On appeal, the Second Circuit reversed the District Court's order suppressing the bills. After reiterating that the defendant had to show a violation of his reasonable expectation of privacy, the court found that the defendant had demonstrated a subjective expectation of privacy, given that he had hidden the bills under a mat and had put his feet on it, "clearly evidencing his desire to keep these items private," and had conceded that the bills were his. Nonetheless, the court refused to suppress the evidence. It concluded that this subjective expectation was – as a matter of law – objectively unreasonable, given that he had known the car's owner for "only" one week, had no right as a passenger to exclude others from the car, and had hidden the bills in a "hurried and furtive manner while the police were questioning the driver." The court relied in part on *Rawlings* v. *Kentucky*, 448 U.S. 98 (1980), which refused to recognize a reasonable expectation of privacy under similar circumstances.

      Second, Judge Swain addressed facts almost identical to those presented here in *United States* v. *Buckner*, 417 F. Supp. 2d 240 (S.D.N.Y. 2005). In *Buckner*, the defendant sought "to suppress a revolver found beneath the front passenger seat of the livery cab in which he was arrested." *Id.* at 241. The defendant was a passenger in the livery cab and, after the cab was stopped, a police officer saw the defendant, "who was sitting in the back passenger seat, kick something under the front passenger seat after the cab was stopped. . . . After removing Defendant from the cab, the officers searched the vehicle and seized a revolver. . . . Defendant claim[d] that the stop of the vehicle, the subsequent search, and the seizure of the revolver violated his Fourth Amendment rights." *Id.* Judge Swain denied the motion, stating that irrespective of whether the "stop, search and subsequent seizure were unjustified," (*id.*) the defendant could not establish a violation of his own Fourth Amendment rights because he had "not presented sufficient facts to show that he had a legitimate expectation of privacy in the area underneath the front passenger seat." *Id.* at 242.

      Even if the defendant's allegations in his declaration were true,[1] they would make out a claim nearly identical to that rejected by Judge Swain in *Buckner*. Like in *Buckner*, the defendant alleges that he was a passenger in the back seat of a liver cab pulled over by NYPD officers. (Jones Decl. ¶ 2). Like in *Buckner*, the defendant alleges that he was ordered to exit the cab by the NYPD officers. (Jones Decl. ¶ 5). Like in *Buckner*, the NYPD officers recovered a revolver from under the passenger seat accessible to the back seat. (Jones Decl. ¶ 7). Like in *Buckner*, the defendant alleges that he had an expectation of privacy in the back-seat area of the

---

    [1]    The Government disputes the allegations in the Declaration of Dean Jones in Support of His Motion to Suppress, dated January 28, 2008 ("Jones Decl.").

Hon. Paul A. Crotty
March 20, 2008
Page 6 of 12

cab. (Jones Decl. ¶ 6). And, like in *Buckner*, the defendant did not actually have such an expectation of privacy in the back-seat area of the cab. *Buckner*, 417 F. Supp. 2d at 242.[2]

This case, moreover, presents an example of precisely what was carved out of *Brendlin*. *Brendlin*, after all, did not change the standards, as applies to a taxi cab or other common carrier, for determining if a person is seized and has the *per se* right to challenge the stop and any subsequent search of the vehicle. *See Brendlin*, 127 S. Ct. at 2410 n.6. By explicitly limiting its holding to private cars, the Supreme Court left in place the jurisprudence that militated the denial of the similar motion to suppress in *Buckner*. *See Buckner*, 417 F. Supp. 2d at 242; *see also United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993) (taxi passenger could not challenge search of taxi's trunk).

Here, moreover, as in *Rakas*, the defendant has not asserted a possessory or property interest in the vehicle searched or the gun seized, nor has he asserted ownership of the gun, undercutting any subjective claim that he expected privacy in the area under the seat in the public cab. In short, the defendant's claim fails on its face. He is challenging the search of a public area of a public cab in which he was merely a short-term local passenger. He is challenging the recovery of an item, which he stashed in this public space at the last minute as police approached, that he refuses to admit was his. Although he bears the burden of showing a legitimate expectation of privacy in this space, he has not alleged any facts indicating either that he had a subjective expectation of privacy (which is necessary but not sufficient to confer standing) or that such an expectation, assuming it existed, was objectively reasonable. Nor, based on the caselaw, could he make this showing. As a matter of law, the defendant did not have a reasonable expectation of privacy in the interior space of this cab, and thus he has not carried his burden of demonstrating a violation of his Fourth Amendment rights. Accordingly, he lacks standing and his motion must fail.

---

[2] The defendant cites only one case – *United States v. Santiago*, 950 F. Supp. 590, 597 (S.D.N.Y. 1996) – for the proposition that a passenger does, indeed, have a privacy interest in the back-seat area of a cab. Judge Scheindlin's opinion in that case stands alone, and has not been followed or cited even once for this proposition in the more-than-eleven years since it was issued. Indeed, its reasoning stands contrary to the Supreme Court's discussion in *Brendlin* of the distinction between a passenger in a private vehicle and one in a common carrier. *Santiago* reasons that a passenger in a taxicab has a *greater* expectation of privacy than one in a private car, and therefore has standing to challenge a search pursuant to a stop of that vehicle. *See Santiago*, 950 F. Supp. at 598. The Supreme Court, to the contrary, recognized that, although a passenger in a private vehicle has a *per se* right to challenge the stop and any subsequent search, a passenger in a taxi cab or other common carrier does not. *See Brendlin*, 127 S. Ct. at 2410 n.6.

Hon. Paul A. Crotty
March 20, 2008
Page 7 of 12

    2.    **In Any Event, The Traffic Stop And Search And Seizure Were Lawful**

        a.    **The Traffic Stop and Investigatory Detention Were Valid as a Matter of Law Because the Cab Committed a Traffic Violation**

Even if the traffic stop was a seizure for which the defendant has standing to challenge, the motion to suppress must be denied because the traffic stop was lawful. Because traffic stops are limited seizures within the meaning of the Fourth Amendment, they "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States* v. *Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (quotation omitted). "When an officer observes a traffic offense—however minor—he has probable cause to stop the vehicle." *Id.* at 782 (quotation omitted). In addition, "[i]t does not matter whether the stop was on account of the traffic violation, because reasonableness is evaluated from an objective standard." *Holeman* v. *City of New London*, 425 F.3d 184, 190 n.1 (2d Cir. 2005); *United States* v. *Dhinsa*, 171 F.3d 721, 725 (2d Cir.1998) ("an observed traffic violation legitimates a stop even if the detectives do not rely on the traffic violation"); *Whren* v. *United States*, 517 U.S. 806, 813 (1996).

In this case, the Government has submitted sworn testimony, in the form of the Complaint, that the cab in which defendant was riding on August 8, 2008, was pulled over because the "livery cab did not include a partition between the driver and the passenger." (Complaint ¶ 2(b)). This is a traffic offense. *See* N.Y. Comp. Codes. R. & Regs., tit. 35, §§ 6-13(a)(1) & (a)(3)(ii); *People* v. *Cannon*, 743 N.Y.S.2d 224, 226 (N.Y. Sup. 2002) (requiring livery cabs to maintain either a partition or another safety device such a security camera). Accordingly, the Officers' decision to stop the car when they saw it had no partition was justified and lawful.

The defendant does not allege in his declaration that the livery cab had no partition; rather, he states that the livery cab had a security camera.[3] (Jones Decl. ¶ 3). The defendant does not, however, allege that the security camera was visible to the police officers, nor could he. Moreover, the defendant does not allege that the livery cab had a sticker, visible to the NYPD, indicating that it was equipped with a security camera. This is fatal to the defendant's motion. In *United States* v. *Gaines*, 457 F.3d 238 (2d Cir. 2006), the Second Circuit considered the propriety of a stop of a livery cab where the police saw that the livery cab had no partition. In that case, as opposed to this one, there was testimony "that the cab was equipped with a security camera *and had a window sticker so indicating*, which meant it was not required to have a

---

    [3]    Were this Court to require a hearing, the livery cab driver would testify that the camera was non-operational at the time that he drove the defendant and, accordingly, he understood that he was committing a traffic violation by driving the livery cab without a partition or a working security camera.

Hon. Paul A. Crotty
March 20, 2008
Page 8 of 12

partition." *Id.* at 241 (emphasis added). The Circuit noted that "[b]ecause such a camera is an approved safety device that may be employed in lieu of a partition, its undisputed presence in the cab vitiated the government's asserted basis for the stop." *Id.* at 243-44.[4] However, despite the presence of the camera, the court ruled that "the stop was lawful only as long as he did *not* see the sticker on the window of the passenger-side door indicating that the cab was equipped with a security camera." *Id.* at 243 (emphasis in original). In other words, if there was no sticker, or if the officer did not, in fact, see the sticker, the stop was lawful because the officer did not see the partition.

In addition, where, as here, a motor vehicle has been lawfully detained for a traffic violation, police officers may order both the driver and any passengers "to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). Therefore, regardless of defendant's conduct, Officer-1 would have been justified in ordering the defendant to get out of the car until the traffic stop was completed. *See Holeman v. City of New London*, 425 F.3d 184, 192 (2d Cir. 2005) ("Under *Maryland v. Wilson*, the officers were permitted to request that [the defendant] step out of the car regardless of whether the officers could search the car.").

Even if *arguendo* he did challenge the basis of the traffic stop, it would be clear that both it and the subsequent search of the cab were entirely lawful, and no hearing would be necessary. "[A]n ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (citations and quotations omitted); *see also Terry v. Ohio*, 392 U.S. 1 (1968) (officers may stop and briefly detain if they have a reasonable suspicion "that criminal activity may be afoot"). "'An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have reasonable cause to believe that a traffic violation has occurred.'" *United States v. Harrell*, 268 F.3d 141, 148 (2d Cir. 2001) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)).

This standard is "rather lenient," *United States v. Santana*, 485 F.2d 365, 368 (2d Cir. 1973), and "not a difficult one to satisfy." *United States v. Oates*, 560 F.2d 45, 63 (2d Cir. 1977). The circumstances leading to reasonable suspicion of criminal activity should be evaluated "through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (internal quotation marks omitted); *see, e.g., Scopo*, 19 F.3d at 781 (holding that traffic "stop was based upon a specific and articulable fact: the observed traffic violation. Although [the] traffic violation . . . was minor, the officers acted within their authority in stopping" the vehicle).

---

[4] The defendant relies upon this statement without providing the context discussed herein. *See* Def. Br. 4-5.

Hon. Paul A. Crotty
March 20, 2008
Page 9 of 12

Simply put, the only question is whether the officers observed a traffic violation. *See United States* v. *Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1999).

Here, there can be no genuine dispute as to the validity of the car stop. Indeed, the defendant does not allege that the officers saw the (broken) security camera in the livery cab or that they could have seen it from their vantage point. Nor does he allege that there was a sticker on the livery cab informing the officers that the livery cab was equipped with a security camera and therefore did not need a partition. And he admits that the failure of a livery cab to install a partition or alternative safety device constitutes a traffic violation. (Def. Br. 4). In short, he does not dispute that the information available to the officers at the time of the stop – the failure of the livery cab to install a partition – established "probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *Scopo*, 19 F.3d at 781.

Once the officers stopped the cab, it is equally clear that, had they ordered the defendant out of the car, as he alleges (and the Government disputes), they would have been acting lawfully in ordering the occupants out of the vehicle, *see Maryland* v. *Wilson*, 519 U.S. 408, 414-15 (1997), and conducting a protective search. "In general, 'protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Paulino*, 850 F.2d at 98 (quoting *Michigan* v. *Long*, 463 U.S. 1032, 1049 (1983)); *see also Terry* v. *Ohio*, 392 U.S. 1, 23 (1968) (officers may "take steps to assure [themselves] that the person with whom [they are] dealing is not armed with a weapon that could unexpectedly and fatally be used against [them]"). Accordingly, even if *arguendo* the defendant had standing (which he does not), there would be no basis for suppressing the gun.

### b.   The Defendant Abandoned Any Privacy Rights He May Have Had When He Fled

Even if the defendant were to have standing to challenge the stop and were to have privacy rights in the back-seat area of the livery cab, he abandoned any such rights when he fled the police on two grounds: (1) he abandoned the back-seat area of the livery cab; and (2) the livery-cab driver consented to the search of the back-seat area of the livery cab, which he had obtained exclusive control over when the defendant fled.

It is well-established that, where a defendant has abandoned property, property is deemed abandoned, and the Fourth Amendment is not offended by the subsequent warrantless search. *See Abel* v. *United States*, 362 U.S. 217, 241 (1960) (warrantless seizure of abandoned property does not violate the Fourth Amendment); *United States* v. *Welbeck*, 145 F.3d 493, 498 (2d Cir. 1998); *United States* v. *Lee*, 916 F.2d 814, 818 (2d Cir. 1990). Here, if there is a hearing, the evidence will show that the defendant fled the police – and the livery cab – therefore abandoning the back-

Hon. Paul A. Crotty
March 20, 2008
Page 10 of 12

seat area of the livery cab, as well as the revolver that the police found, and also abandoning his Fourth Amendment interest in either.

When the defendant fled the scene, moreover, he left the livery-cab driver as the sole custodian of the livery cab, including the back-seat area. If there is a hearing, the evidence will show that the livery-cab driver informed the NYPD officer that he believed the defendant left something in the cab, and consented to the NYPD search of the back-seat area of the livery cab. The law is clear: although a warrant and probable cause are often necessary in order to render a search reasonable, "[i]t is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conduct pursuant to consent." *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 219 (1973). *See also, Florida* v. *Jimeno*, 500 U.S. 248, 250-51 (1991) ("we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so") (citing *Schneckloth*, 412 U.S. at 219); *Holeman* v. *City of New London*, 425 F.3d 184, 191 (2d Cir. 2005) ("[o]ne such exception [to the Fourth Amendment's protection against warrantless searches] is consent by a party whose property or person is to be searched") (citing *United States* v. *Elliot*, 50 F.3d 180, 185 (2d Cir. 1995)).

There are no magic words that are needed to establish consent to a search. *See, e.g., United States* v. *Mire*, 51 F.3d 349, 352-53 (2d Cir. 1995) (per curiam) (response of "take a look" constituted consent to search extending to containers within a bag). Rather, "the ultimate question is whether 'the officer had a reasonable basis for believing that there had been consent to search.' " *United States* v. *Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (citations omitted). "Recent Supreme Court decisions emphasize . . . that the issue of reasonableness is to be measured by an objective standard." *Id.* In making that determination, courts ask "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991) (citations omitted).

Accordingly, when the livery-cab driver consented to a search of the back-seat area of the livery cab, the NYPD was justified in searching the back-seat area of the livery cab and acted well within the law.

### B.   The Defendant's Statements Should Not Be Suppressed

The defendant argues that his statements to the officers on the day of his arrest should be suppressed because they were made as the fruits of an illegal arrest arising from an unconstitutional search and seizure. (Def. Br. 6). Because the search and seizure were constitutional, as described above, this argument must fail.

For these reasons, no hearing is necessary and the defendant's motion to suppress his post-arrest statements should be summarily denied.

Hon. Paul A. Crotty
March 20, 2008
Page 11 of 12

### C.   The Entire Suppression Motion Should Be Summarily Denied

As demonstrated above, the defendant's motion to suppress the gun fails as a matter of law. Accordingly, the Court should summarily deny the motion without holding an evidentiary hearing.

Before a hearing is held, the defendant must "state sufficient facts which, if proven, would [require] the granting of the relief requested." *United States* v. *Kornblau*, 586 F. Supp. 614, 621 (S.D.N.Y. 1984). "It is well-established that evidentiary hearings on a motion to suppress evidence should not be set as a matter of course, but only when the petition alleges facts which if proved would require the grant of relief." *United States* v. *Amparo*, 1988 WL, 25186, No. 87 Cr. 753 (S.D.N.Y. Mar. 3, 1988) (internal quotation marks omitted). To meet this burden, the defendant must submit an affidavit from an individual with personal knowledge of the relevant facts. *See United States* v. *Gillette*, 383 F.2d 843, 848-49 (2d Cir. 1967); *United States* v. *Malizia*, No. 99 Cr. 207, 2000 WL 193129 at *3 (S.D.N.Y. Feb. 16, 2000). An evidentiary hearing is ordinarily granted only if "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States* v. *Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotations omitted) (emphasis added).

In this case, the defendant has submitted one declaration in support of his motion. The declaration, while in the defendant's name, does not contain any particular allegations – even conclusory – that, even if true, would entitle the defendant to the requested relief, and thus no hearing should be held, as discussed above. *See, e.g., Amparo*, 1988 WL 25186 (because conclusory assertion that defendant had been acting lawfully before his arrest would not, if true, entitle him to requested suppression, no hearing was necessary).

Hon. Paul A. Crotty
March 20, 2008
Page 12 of 12

## CONCLUSION

For the foregoing reasons, the Court should summarily deny the defendant's motion in its entirety without a hearing.

                                        Respectfully submitted,

                                        MICHAEL J. GARCIA
                                        United States Attorney

                                By:     _____
                                        Michael D. Maimin
                                        Assistant United States Attorney
                                        Southern District of New York
                                        (212) 637-2238

cc:     Julie A. Clark, Esq. (via fax)